DECISION.
{¶ 1} Defendant-appellant Michael Westendorf appeals the judgment of the Hamilton County Juvenile Court denying his request to modify his child-support obligation from $1,138 per month to $50 per month. Because the trial court did not find that Westendorf was voluntarily unemployed or underemployed before imputing income to him, we are constrained to reverse its judgment and remand for a new hearing to consider an appropriate amount of child support.
 {¶ 2} The record reveals that Westendorf earned income by investing in the stock market. In 1980, he invested an inheritance of $300,000 in real estate. In 1986, he sold a majority of his real estate holdings for nearly $1,000,000 and invested the proceeds in the stock market. Since then, Westendorf has been fairly successful in his investment strategies. He asserts that he is self-employed.
 {¶ 3} On February 23, 2001, the juvenile court journalized an entry establishing that Westendorf was the father of Kianna, born August 17, 1998, and ordered Westendorf to pay child support for his daughter in the amount of $1,138 per month. This figure was reached by averaging Westendorf's reported adjusted gross income ("AGI") on his federal tax returns from the years 1995 through 1999. Thus, $90,759 was attributed to Westendorf as yearly income earned from the buying and selling of securities, and that figure was used in computing his monthly child-support payment.
 {¶ 4} Nine months after the support order was entered, Westendorf sought an administrative modification of his child-support obligation. The Hamilton County Child Support Enforcement Agency ("CSEA") determined that Westendorf was entitled to a review of his child-support obligation but that the agency was unable to conduct the review because it would require the agency to deviate from the statutory child-support guidelines. Thus, CSEA requested that the trial court, which had originally set the support obligations, consider Westendorf's motion to modify.
 {¶ 5} The trial court held an evidentiary hearing on August 7, 2002. Westendorf argued for a downward modification of the support obligation because he had experienced a substantial reduction in his income. In support of his argument, Westendorf presented his 2001 corporate and personal federal income tax returns, which indicated almost $1,000,000 in capital losses and an AGI of $36,588. But Westendorf argued that his adjusted gross income was really $0 or in the negative because he was only permitted to write off $3000 in capital losses that year. Westendorf also submitted a broken chain of portfolio statements that indicated that he had a little over $975,000 in liquid assets as of June 30, 2002. Finally, the evidence demonstrated that Westendorf owned an unencumbered home valued at over $300,000, two late-model automobiles, and two classic automobiles of high value.
 {¶ 6} In its entry denying Westendorf's motion for modification, the trial court noted that using the AGI to calculate Westendorf's child-support obligation would not be appropriate since Westendorf still had liquid assets totaling almost $1,000,000 and other assets (home and automobiles) valued at $400,000. The court expressed concern about Westendorf's ability to shelter his assets and to determine when he would realize income. For example, the court noted that although Westendorf's net worth had only been reduced by $300,000 in 2001, he was able to report over $900,000 in capital losses that year. Based on those circumstances, and relying on R.C. 3119.01(C)(11)(b), the trial court determined that it should impute potential income to Westendorf in the amount of $88,000. It reached this figure by applying a 5.5% interest rate to Westendorf's assets. After calculating the child-support obligation with the $88,000 income figure, the obligation came to $1,297 per month. Because this amount was less than a ten-percent difference from the original child-support payment, the trial court chose to order that the original support order remain in effect.
 {¶ 7} On appeal, Westendorf now asserts four assignments of error. Before discussing the assignments, we address Westendorf's motion raised at oral argument that we strike the appellate brief filed by CSEA. We overrule that motion because CSEA has a legitimate and independent interest on behalf of the state in regulating child-support orders.[1] Accordingly, it was proper for CSEA to file a brief on its own behalf.[2]
 {¶ 8} In his first assignment of error, Westendorf asserts that the trial court erred in denying his motion for a downward modification of his child-support obligation, when it "imputed an unreasonable and an arbitrary interest rate of 5.5% on [his] assets without finding that [he] was voluntarily unemployed or underemployed or that [his] assets were voluntarily underperforming." We are constrained to agree.
 {¶ 9} R.C. 3119.01 provides that "income," for purposes of determining a child-support order, consists of the sum of the gross income of the parent and any "potential income" of the parent if voluntarily underemployed or unemployed. Whether a parent is "`voluntarily underemployed' within the meaning of R.C. 3113.215(A)(5), and the amount of `potential income' to be imputed to a child support obligor, are matters to be determined by the trial court based upon the facts and circumstances of each case. The determination will not be disturbed on appeal absent an abuse of discretion."[3]
 {¶ 10} The Ohio Supreme Court has held that "the terms of R.C.3113.215 are mandatory in nature and must be followed literally and technically in all material respects."[4] We note that R.C. 3113.215
was repealed effective March 21, 2001. But the provisions of the statute relevant to this appeal and utilized by the trial court to impute income to Westendorf (R.C. 3119.01) are analogous to the provisions of R.C.3113.215. Accordingly, the Ohio Supreme Court's statements regarding R.C. 3113.215 are relevant to R.C. 3119.01.
 {¶ 11} Pursuant to R.C. 3119.01(C)(11), a court may only impute potential income if it has first determined that the child-support obligor is voluntarily unemployed or voluntarily underemployed. In Leonard v.Erwin,[5] the Fourth Appellate District held that "the lower court must find that a party is voluntarily unemployed or underemployed before it can impute any income to that party."[6] In Allen v. Allen,[7] the Eleventh Appellate District held that potential income was erroneously imputed to the child-support obligor when the trial court failed to make an "explicit" finding that the obligor was voluntarily unemployed or underemployed.[8]
 {¶ 12} A review of the record here shows that the trial court did not make an
explicit finding that Westendorf was voluntarily unemployed or underemployed prior to imputing potential income to him. In light of the statutory language and the case law interpreting that language, we hold that the trial court abused its discretion in imputing potential income to Westendorf, pursuant to R.C. 3119.01(C)(11)(b), in the absence of an explicit finding that he was either voluntarily unemployed or voluntarily underemployed.
 {¶ 13} CSEA argues that even if the trial court did not make the requisite finding prior to imputing income, the trial court's determination that the support order should remain at $1,138 per month was supported by R.C. 3119.23(K) and (L). R.C. 3119.23(K) and (L) provide that "[t]he court may consider any of the following factors in determining whether to grant a deviation [from the child-support guidelines]: * * * (K) the relative financial resources, other assets and resources, and needs of each parent; (L) the standard of living and circumstances of each parent and the standard of living the child would have enjoyed had the marriage continued or had the parents been married." While these statutory provisions may support the trial court's support order, the trial court did not discuss or rely on these provisions in making its determination. Accordingly, we do not consider their effect at this time.
 {¶ 14} It is evident from the record that the trial court, in its discretion, believed that it was not in the best interest of Kianna for the child-support order to be reduced to $50 per month, when Westendorf otherwise had liquid assets totaling over $900,000. We agree with the trial court. But the Ohio Supreme Court has stated that the statutory provisions for determining child support must be followed "literally and technically." Accordingly, it was reversible error for the trial court to impute potential income to Westendorf without first explicitly finding that he was voluntarily underemployed or voluntarily unemployed. The first assignment of error is sustained.
 {¶ 15} Because we have sustained the first assignment of error, the remaining assignments are moot, and we do not address them. Consequently, the judgment of the juvenile court is reversed, and this cause is remanded for further proceedings on the appropriate amount of Westendorf's support obligation.
Judgment reversed and cause remanded.
Doan, P.J., Hildebrandt and Painter, JJ.
[1] Benzinger v. Benzinger (Feb. 7, 1996), 1st Dist. Nos. C-940974 and C-940990.
[2] Contrary to Westendorf's assertion, CSEA's appellate brief was not filed on behalf of Kianna's mother, but on behalf of the agency.
[3] Rock v. Cabral (1993), 67 Ohio St.3d 108, 616 N.E.2d 218, paragraph two of the syllabus.
[4] Marker v. Grimm (1992), 65 Ohio St.3d 139, 601 N.E.2d 496, paragraph two of the syllabus.
[5] (1996), 111 Ohio App.3d 413, 676 N.E.2d 522.
[6] Id. at 417, 676 N.E.2d 552.
[7] (June 26, 1998), 11th Dist. No. 97-T-0114.
[8] Id.